Valarie BROWN, Appellant,

v.

MONTGOMERY COUNTY HOSPITAL DISTRICT, d/b/a Medical Center Hospital, Susan Spring, and Louis Bremer, Appellees.

No. 09–95–020CV.

Court of Appeals of Texas, Beaumont.

Aug. 29, 1996.

Rehearing Overruled Sept. 26, 1996.

Larry Watts, Watts & Associates, Houston, for appellant.

Ralph Burnham, Timothy D. Riley, Floyd, Taylor & Riley, Houston, Terri S. Harris, Riley & Harris, Houston, for appellee.

Before BURGESS, STOVER and CARR*, JJ.

## OPINION

RON CARR, Justice (Assigned).

This is an appeal from a summary judgment denying recovery in a wrongful termination of employment case. Appellant Valarie Brown, sued appellees, Montgomery County Hospital District, d/b/a Medical Center Hospital, the hospital's Vice–President, Susan Spring, and Louis Bremer, the hospital's President and CEO, alleging she was wrongfully terminated [1] from her employment at Medical Center Hospital. The trial court granted Appellees' motion for summary judgment and this appeal followed.

We grant Brown's first two points of error, because we find that Appellant raised a genuine issue of material fact via competent summary judgment evidence as to whether or not (1) Brown voluntarily resigned or was forced to resign her employment with the hospital by constructive discharge; (2) Brown's last paycheck included an amount for unworked severance pay and, if so, did Brown know that prior to September 25, 1991 so as to effect an estoppel of her constructive discharge claim; (3) Brown's resignation was accepted by the hospital for an effective date of September 6, or September 25, 1991; and (4) there was an oral contract of employment between Brown and the hospital [2] and, if so, did the hospital breach the oral contract. We remand those issues back

to the trial court for a fact finding determination. To the extent we find that the uncontroverted summary judgment evidence proves as a matter of law that Spring and Bremer individually are immune from personal liability, we deny Brown's third point of error; to the extent we hold Brown's due process claim against the hospital survives summary judgment attack, we sustain Brown's third point of error; because we hold as a matter of law there was no violation of Appellant's liberty rights, we deny Appellant's fourth point of error.

## STANDARD OF REVIEW

A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there are disputed material fact issues precluding summary judgment, proof favorable to the non-movant should be taken as true, the court indulging every reasonable inference and resolving any doubts in favor of non movant. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex.1987). When a defendant comes forward with competent summary judgment evidence that conclusively negates one or more essential elements of the plaintiff's claim, the plaintiff is under a burden to come forward with competent controverting summary judgment evidence to preclude the entry of judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

## SUMMARY JUDGMENT FACTS

In 1991, Brown had served ten years as the Laboratory Director for Medical Center

---

* The Honorable Ron Carr, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

1. Appellant Valarie Brown asserted the following causes of action in her lawsuit; 1) violations of her due process rights under the United States Constitution and under the Texas Constitution, Article I, Section 19; 2) violation of Appellant's First Amendment rights under the United States Constitution and under the Texas Constitution, Article I, Section 8; 3) breach of contract based on the Hospital's termination of Appellant's em-

ployment without good cause and the Hospital's failing to follow its own written procedures by disallowing Appellant an opportunity to present a formal grievance to the hospital; and 4) violation of Appellant's liberty interests by punishing Appellant in absence of personal culpability.

2. Because Brown has not made any contract claim against Spring or Bremer, individually, we hold Spring and Bremer entitled to summary judgment on Brown's contract claim as a matter of law.

Hospital. In March 1990, Brown gained the title "Systems Manager" when the District undertook to computerize its medical laboratory. Needing assistance in this task, Appellant hired an assistant, Jewel Smith, as Assistant Laboratory Director. According to Brown, Smith soon proved to be incompetent, a performance deficiency which Brown began to document and report to her superiors and by August 1991, Smith's inadequate job performance had become a genuine detriment to patient safety. As Smith was still in her probationary employment period, Brown recommended to Spring that Smith be terminated. Spring refused to act. On September 4, 1991, Spring called Brown to Spring's office and presented a document to Brown which contained a host of unflattering criticisms regarding Brown's interpersonal and managerial skills. Brown's surprise was profound because her previous ten years of work performance evaluations were very good. No complainant was actually named in Spring's document, though Brown requested that those complaining be identified and their charges made specific, so that Brown could adequately respond. Although Spring denies threatening Brown with termination, Brown alleges she was told "You're going to have to change or you're going to be fired." As the meeting drew to a close, Spring asked Appellant when she (Brown) would be resigning. Because Spring refused to be specific about the complaints and Spring threatened imminent termination i.e., resign or be fired, Brown resigned her position, effective on September 25, 1991. Brown says Spring agreed to accept her resignation "effective September 25, 1991." Brown told Spring that she wanted to continue working through the effective date of her resignation, September 25, 1991. Spring told Brown, however, that she would not allow her to work past Friday, September 6, 1991. Spring thus informed Brown that a final check would be cut reflecting payment of Brown's regular salary through September 25, 1991, accrued salary, unused vacation time, unused sick pay and accrued holiday time. This largesse was forthcoming because Brown had given the required two-week notice. According to Brown, at no time was she told that the check represented severance compensation.

Shortly after the meeting with Spring, Brown submitted her formal written letter of resignation, complaining that the "[a]dministration is unwilling to make the commitment of personnel, time, and support necessary for the continued success of the Laboratory and the implementation of a laboratory information system at this time...." The letter makes no reference to the meeting with Ms. Spring or the complaints levied against Brown at the meeting. The letter was delivered to Bremer, as president of the Medical Center Hospital.

According to Bremer, Brown's resignation was accepted by Bremer and became effective on September 6, 1991. Thereafter, Brown received a check from the hospital in the amount of $7,562.03, which according to the hospital was for severance pay. Brown accepted the check, cashed it, and did not return to work following September 6, 1991.

On September 25, 1991, having reconsidered the potentially career damaging manner in which she had departed employment from the hospital, Brown rescinded her resignation in writing to Bremer. She also stated her intention to activate due process through a grievance procedure. Three months later, Brown brought this suit alleging she was wrongfully terminated.

## CONSTRUCTIVE DISCHARGE/VOLUNTARY RESIGNATION

Appellant's first point of error contends that she raised a genuine issue of material fact via competent summary judgment evidence as to whether she was forced to resign or resigned voluntarily. Brown's second point of error contends (1) that because she alleged a valid and enforceable written and oral contract, her controverting summary judgment evidence raised a genuine fact-issue as to whether or not Brown's employment at-will status was modified; and (2) because Brown's summary judgment affidavit attested that she was not fired for good cause, a fact issue existed on the issue of breach of contract. To prevail on Brown's first point, Brown must show either that she was terminated or was constructively dis-

charged. Brown did not allege at the trial court level, and does not raise on appeal, that she was actually terminated, so the point has been waived. *Garcia v. Robinson*, 817 S.W.2d 59 (Tex.1991). Brown claims, rather, that her resignation was, in fact, not a resignation, but was a "constructive discharge."

Under Texas law, a "constructive discharge" occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *Epps v. NCNB Texas National Bank*, 838 F.Supp. 296, 304 (N.D.Texas 1993), *affirmed*, 7 F.3d 44 (5th Cir.1993). To find that a constructive discharge has occurred, the trier of fact must be satisfied that the working conditions to which the employee was subjected were so difficult or unpleasant that a reasonable person in the employee's shoes would have been compelled to resign. *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993).

Bremer states by summary judgment affidavit that Brown resigned voluntarily.[3] Appellees argue that Brown voluntarily resigned because it is undisputed that nowhere in Brown's September 4, 1991, resignation letter does Brown state that she is resigning for fear of termination.

However, Brown's summary judgment affidavit states that Spring forced Brown to resign or be fired and that her intention was to avoid the career damaging effects associated with an involuntarily termination. This is sufficient to raise an issue of fact as to whether or not Brown voluntarily resigned or was forced to resign.[4]

The hospital also argues that *Boze v. Branstetter*, 912 F.2d 801, 804–05 (5th Cir. 1990) bars Brown's constructive discharge claim as a matter of law. In that case, an attorney working for Chevron received a poor performance evaluation. The evaluation cited many complaints the company had with his work, and stated that if the attorney failed to improve and sustain the corrections listed, the company would be forced to take disciplinary action, including discharge. *Id.* at 803. Shortly thereafter, the attorney retired and filed suit against Chevron.

The trial court granted Chevron's motion for summary judgment, which was upheld on appeal. In affirming the summary judgment, the Fifth Circuit held that the attorney had not been constructively discharged because; (1) the working conditions he described did not constitute discharge; and (2) a reasonable employee dissatisfied with his performance evaluation would have pursued the company's grievance procedures. *Id.* at 805. However we find *Boze* to be distinguishable. In our case, Brown submitted summary judgment evidence via her summary judgment affidavit that Spring demanded Brown resign or be fired and we hold that such summary judgment evidence is sufficient to defeat a summary judgment attack and if believed by a trier of fact, is sufficient to support a constructive discharge claim.

## ESTOPPEL

Next, Appellees contend that Brown is estopped to claim that she was constructively discharged because she knowingly accepted and retained the benefits of her voluntary resignation, i.e., severance pay. The doctrine of quasi-estoppel prevents a party from retaining a benefit by asserting a position to the disadvantage of another and then asserting a right which is inconsistent with that previous position. *Stimpson v. Plano Indep. School Dist.*, 743 S.W.2d 944, 946 (Tex.App.—Dallas 1987, writ denied); *Hurt v. Standard Oil Co.*, 444 S.W.2d 342, 347 (Tex.Civ.App.—El Paso 1969, no writ). Therefore, Appellees argue that once Brown received, accepted, and retained the severance check, she was barred from taking an inconsistent position that would cause loss or injury to appellees. *See Fabrique v. Cor-*

---

3. Appellee Bremer was not physically present during the September 4, 1991, meeting, and thus, Bremer's summary judgment affidavit does not address what representations were made by Spring to Brown at that meeting.

4. In addition, neither Spring or Bremer may testify as to Brown's underlying intention when she submitted her September 4, 1991, resignation letter. *See Lawrence v. T.D. Industries*, 730 S.W.2d 843, 845 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

*man,* 796 S.W.2d 790, 792 (Tex.App.—Dallas 1990, writ denied).

In support of this estoppel argument, Appellees rely on Brown's own summary judgment affidavit which states:

I then asked what I was going to receive in terms of salary and benefits. Ms. Spring stated that since I had given my required two-week notice and offered to work during the notice period, I would be paid my regular salary through and until the end of the effective date of my termination, September 25, 1991. In addition, I was assured that I would be paid all of my accrued salary, unused vacation time, unused sick pay, and accrued holiday time.

■ However, Appellees incorrectly argue that no controverting summary judgment evidence was presented. Brown provided controverting summary judgment evidence in the form of a copy of the paycheck stub and the check itself, which Brown argues does not mention the word "severance." Additionally, in her summary judgment affidavit, Brown noted that Spring recited the various items which were to comprise Brown's last paycheck and at no time did Spring mention "severance pay." Following our *Nixon* standard of review, we conclude that Brown's controverting summary judgment evidence is sufficient to raise a fact issue as to whether or not Brown's last paycheck included an amount for unworked severance pay (or was only for monies due her pursuant to hospital policy) and if so, whether Brown knowingly accepted it as a severance pay check prior to September 25, 1991.

## ACCEPTANCE OF RESIGNATION

On September 25, 1991, Brown wrote Bremer a letter withdrawing her September 6, 1991, resignation. Brown's summary judgment affidavit asserts that Brown and Spring agreed that her September 6, 1991, resignation would be effective September 25, 1991. According to Bremer, she accepted Brown's resignation on September 6, 1991. This is sufficient to raise a fact issue as to whether Brown's resignation was accepted by the hospital for an effective date of September 6, 1991, or September 25, 1991.

## BREACH OF CONTRACT

The hospital's summary judgment evidence maintains that there was no contract, written or oral, between Brown and the hospital and that any oral contract, if any, is unenforceable as a matter of law because it would violate the statute of frauds. *See Wal–Mart Stores, Inc. v. Coward,* 829 S.W.2d 340 (Tex. App.—Beaumont 1992, writ denied).

## WRITTEN CONTRACT

■ Brown first maintains that a written contract of employment between Brown and the hospital exists via the employee benefits manual. However, the employee manual itself reveals that her employment is at will. In addition, we do not find the employee manual language implies that an employee cannot be terminated except for "good cause." An employee manual or handbook cannot create a contract between the employee and employer unless it specifically and expressly so states by limiting the relationship and curtails the employer's right to terminate the employee. *Figueroa v. West,* 902 S.W.2d 701, 704 (Tex.App.—El Paso 1995, no writ); *McAlister v. Medina Elec. Co-op., Inc.,* 830 S.W.2d 659, 664 (Tex.App.—San Antonio 1992, writ denied).

■ Accordingly, we reject Brown's written contract argument and hold as a matter of law that this employee benefits manual did not modify the at-will relationship.

## ORAL CONTRACT

Brown next maintains that an enforceable employment contract existed between Brown and the hospital via an oral agreement.

■ The long-standing rule in Texas is that absent contractual limitations, employment for an indefinite term may be terminated at-will and without cause. *Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 723 (Tex.1990). However, the parties may modify the at-will employment by agreement, and the agreement may be oral. *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825, 826 (Tex.App.—Austin 1989, writ dism'd)(an oral agreement not to fire an employee except for "good cause" modifies

the at-will status); *Kelley v. Apache Products, Inc.*, 709 S.W.2d 772, 774 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.)(any employment at-will contract can be modified by an oral agreement); *Johnson v. Ford Motor Co.*, 690 S.W.2d 90, 93 (Tex.App.—Eastland 1985, writ ref'd n.r.e.)(oral agreement that one would not be terminated except for "good cause" modifies the at-will relationship and is enforceable).

In this case, Brown's summary judgment affidavit asserts that prior to and during her employment, she was orally promised by the then-administrator that as long as Brown performed her job satisfactorily, Brown would have a job *and* that Brown would not be fired without "good cause." For purposes of summary judgment we take Brown's affidavit as true. Therefore, such representations by the then-administrator who acted as an agent of the Hospital would constitute an oral modification of Brown's at-will status. *See Morgan*, 764 S.W.2d at 827.

An oral agreement not to fire an employee unless there exists "good cause" or as long as an employee performs satisfactorily ("satisfaction contract") has been routinely held to be a valid oral modification of the at-will status and enforceable. *See Morgan*, 764 S.W.2d at 827, *Johnson*, 690 S.W.2d at 93, *Hardison v. A.H. Belo Corp.*, 247 S.W.2d 167, 168 (Tex.Civ.App.—Dallas 1952, no writ). As the court in *Morgan* stated at 827:

> More important, subsequent authorities have limited the at-will doctrine in nondurational ways. For example, an [oral] agreement not to fire an employee except for good cause does defeat the presumption of at-will status even though no exact duration is agree upon.

The Texas Supreme Court, as well as the other Texas courts have agreed that indefinite term employment contracts, like the oral contract in this case, are considered performable within one year and do not violate the statute of frauds. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex.1974); *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795 (1961); *Morgan*, 764 S.W.2d at 827.

Relying on *Wal–Mart Stores, Inc.*, 829 S.W.2d at 343, the hospital argues that an oral contract with no definite duration violates the statute of frauds. However, in *Coward*, Plaintiff Coward alleged a contract "for life", a fact which this Court noted made the statute of frauds applicable since by plaintiff's own admission, the contract was for an indefinite duration of time. *Coward* at 343. Brown's assertion is very different. She asserts that the promise made to her was that her employment would continue until such time as her work performance gave Appellees just cause to terminate her employment. The primary issue centers on whether a definite term or indefinite term contract was contemplated and what activating event would allow the employer to terminate Appellant's employment.

In her summary judgment affidavit, Brown made clear that she had been orally promised employment as long as she performed satisfactorily and until such time as her performance gave the hospital good cause to terminate her. Such representations have most recently been held to constitute enforceable oral contracts of employment. *See Floors Unlimited, Inc. v. Fieldcrest Cannon Inc.*, 55 F.3d 181 (5th Cir.1995)(citing *Gerstacker v. Blum Consulting Eng's*, 884 S.W.2d 845 (Tex.App.—Dallas 1994, writ denied)).

The court in *Gerstacker* cited *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483 (Tex. 1991), as did this court in *Coward*. However, in *Schroeder* the Texas Supreme Court predicated its decision on the fact that plaintiff Schroeder's oral contract had an implied term of years (8 to 10), a fact which immediately made the oral promise unenforceable under the statute of frauds. *Schroeder*, 813 S.W.2d at 489.

■ The *Gerstacker* court also cited *Hall v. Hall*, 158 Tex. 95, 99, 308 S.W.2d 12, 15 (1957). In *Hall*, the Texas Supreme Court established the rule that where contract performance is uncertain such that performance could possibly be made within one year then such a contract remains outside the statute of frauds. This result is true "... however improbable performance within one year may be." *Gerstacker*, 884 S.W.2d at 849 (citing *Hall*, 308 S.W.2d at 15) (1957). There is a difference between the eventual duration of an oral contract for employment and what

parties initially contemplate to be the intended length of performance. If an expressed contingency, such as deterioration in an employee's quality of performance, is initially contemplated to be the activating event which could lead to termination, such an event could take place within one year's time. Therefore, an oral contract of employment which allows for termination based only on good cause falls outside the statute of frauds. *Id.* at 850–51 (citing *Hall,* 308 S.W.2d at 16–17). *See also Floors,* 55 F.3d at 186, ("... we are now satisfied that, if faced with this issue, Texas courts would conclude that a contract for an indefinite duration, terminable only for cause, falls outside the statute of frauds.").

 We hold Brown has alleged a valid and enforceable oral contract. Accordingly, we find that a fact issue exists (1) as to whether or not Brown and the hospital orally modified Brown's at-will employment status and (2) because Brown has attested in her summary judgment affidavit that she was not fired for good cause, a fact issue exists on the issue of breach of the oral contract, if any.

## SUMMARY

We sustain Brown's first point of error because we find that Brown's summary judgment evidence raised a genuine issue of material fact as to whether or not (1) Brown resigned voluntarily or was forced to resign; (2) Brown's last paycheck included an amount for unworked severance pay and if so, did Brown know that prior to September 25, 1991 so as to effect an estoppel of her constructive discharge claim; and, (3) Brown's resignation was accepted by the hospital for an effective date of September 6, 1991, or September 25, 1991. To the extent that we reject Brown's written contract argument by holding that as a matter of law the employee benefits manual does not constitute a contract modifying Brown's at-will status, we deny Brown's second point of error. To the extent that we hold that Brown has alleged a valid and enforceable oral contract and find that Brown's summary judgment evidence raised a genuine issue of material fact (1) as to whether or not Brown and the hospital orally modified Brown's at-will em-

ployment status and (2) if so did the hospital breach the oral contract, we grant Brown's second point of error. Accordingly, Brown's first point of error is sustained and her second point of error is denied in part and granted in part.

## DUE PROCESS CLAIM

Brown's third point of error contends her due process claim survives summary judgment attack (1) if her contract claim survives because she would hold a vested property interest in her employment and (2) because a question of fact remains regarding whether she voluntarily resigned her position.

First, it is undisputed that Brown is a "public employee" of the Montgomery County Hospital District. The United States Supreme Court has held that "some kind of hearing" is ordinarily a constitutional requirement for due process purposes before a public employee who has a property interest in his job may be terminated. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

 In order to determine whether Brown has a property interest in continued employment sufficient to entitle Brown to due process protection, one looks to state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Schaper v. City of Huntsville,* 813 F.2d 709, 713 (5th Cir. 1987). Under Texas law, Brown can show a valid property interest if she can show that a valid and enforceable contract of employment exists. If a contract exists, Brown is entitled to procedural due process before the Hospital can take Brown's continued employment interest away. *Schaper,* 813 F.2d at 714; *Findeisen v. North East I.S.D.,* 749 F.2d 234, 237 (5th Cir.1984).

 As previously discussed, upon remand, if the fact finder finds that Brown had an enforceable oral contract of employment that she could continue to work for Montgomery County Hospital District as long as she was doing a good job and that she would not be fired unless there was "good cause" to do so, this agreement is enforceable under Texas law. In the event of an affirmative finding that an oral contract of employment

with Montgomery County Hospital District exists, Brown was entitled to pre-termination procedural due process which specifically includes:

(1) written notice of the reasons for termination prior to the termination.

(2) an effective opportunity to rebut those reasons through written response as well as an oral response before the official in charge of making the termination decision.

*Glenn v. Newman,* 614 F.2d 467, 472 (5th Cir.1980). *See also Findeisen v. North East I.S.D.,* 749 F.2d at 237.

In this case, Brown's summary judgment evidence provides that Brown was denied an explanation of the employer's evidence for threatening termination and an effective opportunity for rebuttal. Brown was first told that there was a number of complaints against her but Appellee Spring would not discuss any of the specifics of such complaints. Brown was then asked to resign or be terminated. After Appellant requested an opportunity to confront those who had complained, Spring refused. In addition, after Appellant requested that a grievance be filed against Appellee Spring, such request was also denied.

 The only defense raised by Appellees regarding the lack of procedural due process against the hospital is the hospital's assertion that an employee is not entitled to any procedural due process if he or she is "constructively discharged", citing *Fowler v. Carrollton Public Library,* 799 F.2d 976, 981 (5th Cir.1986). However, such a proposition is inapplicable when an employee is told to "resign or be fired", and it is the employer's intention to provide such a choice in order to deprive the employee of due process. *See Findeisen,* 749 F.2d at 237–38; *Bueno v. City of Donna,* 714 F.2d 484, 492–93 (5th Cir.1983). Therefore, if a fact finder finds Brown was told to resign or be terminated, Brown is entitled to claim a violation of due process rights against the Hospital.

 However, assuming all Brown's allegations to be true, Bremer and Spring individually are entitled to qualified immunity as a matter of law. *See Boozier v. Hambrick,* 846 S.W.2d 593, 597–98 (Tex.App.— Houston [1st Dist.] 1993, no writ)(city official entitled to summary judgment as a matter of law).[5] Whether the individual appellees are entitled to immunity is a question of law for the court. *Pfannstiel,* 918 F.2d at 1183; *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

Spring and Bremer's controverting summary judgment evidence provides that both exercised discretion and judgment in their dealing with Brown and that both acted in good faith within the scope of their authority.

5. Public policy encourages public officers to carry out their duties without fear of personal liability. *Carpenter v. Barner,* 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied). "Government officers have a common-law immunity from personal liability while performing discretionary duties in good faith within the scope of their authority. *See Campbell v. Jones,* 153 Tex. 101, 264 S.W.2d 425, 427 (1954). This immunity, variously known as governmental, official quasi-judicial or qualified immunity, evolved out of a public policy that encourages public officers to carry out their duties without fear of personal liability. *Austin v. Hale,* 711 S.W.2d 64, 68 (Tex. App.—Waco 1986, no writ)(quoting *Baker v. Story,* 621 S.W.2d 639, 643–44 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.)). Otherwise, "the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties." *Baker,* 621 S.W.2d at 643–44. Official immunity protects peace officers. *Wyse v. Department of Public Safety,* 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Dent v. City of Dallas,* 729 S.W.2d 114, 117 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Anderson v. Higdon,* 695 S.W.2d 320, 324 (Tex.App.—Waco 1985, writ ref'd n.r.e.). . . .

The Supreme Court has drawn this distinction between discretionary and ministerial functions: Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.

*Rains v. Simpson,* 50 Tex. 495, 501 (1878)(quoting *Commissioner v. Smith,* 5 Tex. 471, 479 (1849)); *Miller v. State,* 53 S.W.2d 838, 840 (Tex.Civ.App.—Amarillo 1932, writ ref'd)." *Id.* at 101, 264 S.W.2d 425.

Additionally, Brown has not addressed qualified immunity or agency on appeal so it has been waived and judgment for Spring and Bremer, individually, affirmed. *Garcia v. Robinson,* 817 S.W.2d 59 (Tex.1991).

Therefore, both Spring and Bremer are immune from personal liability.

Accordingly, Brown's third point of error is granted as to the hospital and denied as to Spring and Bremer individually.

### LIBERTY INTEREST CLAIMS

Brown's final point of error argues that the trial court should have considered Brown's claim that her liberty interest was violated when she was retaliated against for speaking out on matters of public concern.

▪ Brown first claims she was denied a liberty interest because her free speech rights were allegedly violated. Specifically, she claims that she was "terminated" for speaking out about the work performance of another employee, Jewell Smith. Whether Brown's speech was protected is a legal question for the court. *Terrell v. University of Texas System Police*, 792 F.2d 1360, 1361–62 (5th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

▪ In order to establish a first amendment violation, Brown must first prove that: (1) her speech involved a matter of public concern; (2) that her interest in commenting on matters of public concern is greater than appellees' interest in promoting the efficiency of the public services performed by the hospital; and (3) her speech motivated appellees' decision to fire her. *Frazier v. King*, 873 F.2d 820, 825 (5th Cir.), *cert. denied*, 493 U.S. 977, 110 S.Ct. 502, 107 L.Ed.2d 504 (1989); *Thompson v. City of Starkville*, 901 F.2d 456 (5th Cir.1990).

▪ Brown fails on all three prongs of the free speech test. First, her speech did not involve a public concern. Brown claims in her affidavit she was fired for speaking out against a fellow employee. Specifically, she states:

> I believe I was terminated for speaking out about the decline in patient safety and laboratory care based on Jewell Smith's deficient work performance. I also believe that I was retaliated against for suggesting that Jewell Smith be terminated. I knew that Jewell Smith and Susie Spring were personal friends, but I did not believe I

would be terminated for trying to protect the working conditions in the laboratory.

▪ Speech, as in Brown's case, that addresses personal concerns and complaints or personal employment disputes of the plaintiff, and which is not disseminated to others to inform them of wrongdoing by a governmental agency, is not considered a public concern. *Terrell*, 792 F.2d at 1361–63. Classic internal grievances are not public concerns. *Thompson*, 901 F.2d at 465–67. The *Terrell* court, citing the United States Supreme Court in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), held:

> In determine whether a particular speech or writing addressed a matter of public concern, we must decide whether the plaintiff was deprived of fundamental rights by virtue of working for the government. Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as a citizen or primarily in his role as employee.

*Terrell*, 792 F.2d at 1362. Brown never attempts to intimate that her actions were for the public good, instead of for her own individual interests.

Furthermore, Brown produced no evidence of any potential danger or decline in patient care or safety due to Smith's performance as alleged in Brown's affidavit. Such conclusory and unsupported statements are not competent controverting evidence. TEX.R. CIV. P. 166a(c); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984). Since Brown's speech did not involve any issue of public concern, the prong two balancing test is moot, and there is no summary judgment evidence to support the conclusion that Brown's speech motivated Appellees to fire her.

Second, Brown claims she was denied a liberty interest, because her resignation somehow jeopardized her future employment opportunities. Clearly, Brown was not ter-

minated. However, even if she were, Appellees are still entitled to summary judgment.

An employee is denied a liberty interest if that employee is discharged under circumstances that put his reputation, honor, or integrity at stake so as to impose a stigma against her that forecloses the freedom to take advantage of other employment opportunities, unless the employee is granted a name-clearing hearing. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Brown, to state a cause of action for denial of a name-clearing hearing, must show that: (1) she was discharged, (2) defamatory charges were made against her in connection with the discharge; (3) the charges were made public; (4) the charges were false; (5) no meaningful public hearing was conducted predischarge; (6) she requested a hearing to clear her name; and (7) the request was denied. *Rosenstein v. City of Dallas*, 876 F.2d 392, 395–96 (5th Cir.1989).

In this case, the summary judgment evidence leaves open the question of whether Brown was constructively discharged or resigned. However, the summary judgment evidence conclusively established that there were no publicly defamatory charges made against her; and she did not request (and thus was not denied) a name-clearing hearing. The summary judgment evidence conclusively establishes that Brown cannot establish any one element of her liberty interest cause of action. Moreover, if only one element of Brown's liberty cause of action was disproved, appellees are entitled to summary judgment as a matter of law. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Brown's fourth point of error is denied.

Summary judgment is AFFIRMED IN PART, REVERSED AND REMANDED IN PART.