Pickett v. KHA 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00176-CV







Austin Pickett, Appellant



v.



Housing Authority of the City of Killeen, Texas and Cecil C. Carter, Jr. 


in his official capacity, Appellees







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 154,235-B, HONORABLE RICK MORRIS, JUDGE PRESIDING








 Appellant, Austin Pickett, sued appellees, the Housing Authority of the City of Killeen,
Texas (the "Housing Authority") and Cecil C. Carter, Jr. in his official capacity, alleging wrongful
termination, breach of contract, and promissory estoppel. The district court granted summary judgment
in favor of the Housing Authority and Carter. On appeal, Pickett asserts in eight points of error that: (1)
various statements by Housing Authority officials created an oral contract that prevented the Authority from
terminating Pickett except for good cause; (2) certain written documents prevented the Housing Authority
from terminating Pickett except for good cause; and (3) the record does not entitle the Housing Authority
to summary judgment as to Pickett's promissory estoppel claim. We will affirm the judgment of the district
court in part and reverse in part.



FACTUAL AND PROCEDURAL BACKGROUND


 In the fall of 1989, after interviewing with the Board of Commissioners of the Housing
Authority (the "Board"), (1) Pickett was hired for the position of executive director/secretary of the Housing
Authority. During the course of his interview for the position, Pickett expressed his desire to work for the
Housing Authority until age 65 and then serve as a volunteer. Carter, then chairman of the Board,
responded, "We need somebody like you and, as far as I am concerned, you can stay until you are 65,"
and, "As long as you are doing a good job, you can have the job until you are 65." Throughout most of
his employment with the Housing Authority, Pickett was considered an effective executive director and was
constantly commended on his performance by Board members.

 On April 20, 1994, two Housing Authority tenants, one of whom was also an employee
of the Authority, filed housing discrimination complaints with the United States Department of Housing and
Urban Development ("HUD") alleging that they had been sexually harassed by Pickett. A few days after
the complaints were filed, Pickett met with the Board in executive session and told Board members that
the complaints were the result of a vendetta against him by the women. The Board voted to "stand behind"
Pickett in defense of those allegations.

 In May 1994 a HUD investigator conducted an on-site investigation of the sexual
harassment claims. After completing the inquiry, the investigator met with the entire Board to discuss the
allegations and the evidence. The investigator relayed to the Board and Pickett that he planned to give the
complainants permission to file a lawsuit and that, based on the evidence obtained in his investigation, he
thought liability against Pickett and the Housing Authority was likely. Pickett never stated or implied the
allegations were true. The complaints, however, were eventually settled after the HUD investigator's
meeting with Pickett and the Board.

 On July 27, 1994 Pickett was given notice of a hearing to be held by the Board concerning
his employment status. The hearing notice informed Pickett that his employment status was to be discussed,
that adverse action might be taken against him, and that he would be given an opportunity to respond to
the matters that prompted the meeting. Pickett was present at the meeting and availed himself of the
opportunity to speak to the Board about the sexual harassment allegations and his employment status. 
After the meeting, the Board voted unanimously to terminate Pickett from his position as executive director.

 Pickett sued the Housing Authority and Carter alleging wrongful termination and breach
of contract. The Housing Authority filed a motion for summary judgment as to these claims. Before the
motion was heard, Pickett amended his petition to add a cause of action for promissory estoppel. In
response, the Board filed a supplemental briefbut not an amended motion for summary
judgmentaddressing Pickett's claim of promissory estoppel. Following a hearing, the district court entered
a take nothing judgment "as to all claims" asserted by Pickett. Pickett appeals, raising nine points of error.



DISCUSSION


 The standards for reviewing a summary judgment are well established: (1) the movant for
summary judgment has the burden of showing that there is no genuine issue of material fact and that it is
entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken as true; (3) every
inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment
is not to deprive litigants of the right to trial by jury, but to eliminate patently nonmeritorious claims and
defenses. See Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952).

 Texas is an employment-at-will state. This means that an employee is generally considered
to be an employee at will, and the employment relationship is terminable at any time by either party, with
or without cause, unless an express employment contract provides to the contrary. Federal Express
Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993); East Line & R. R.R. v. Scott, 10 S.W. 99,
102 (Tex. 1888); Cote v. Rivera, 894 S.W.2d 536, 539 (Tex. App.Austin 1995, no writ). An
employee's at-will status may be modified by an agreement of the parties, including an oral agreement. 
Morgan v. Jack Brown Cleaners, Inc., 764 S.W.2d 825, 826 (Tex. App.Austin 1989, writ denied). 
In order to establish a cause of action for wrongful termination, Pickett had to prove that he and the
Housing Authority had a contract specifically providing that the Authority did not have the right to terminate
his employment at will. See Stiver v. Texas Instruments, Inc., 750 S.W.2d 843, 846 (Tex.
App.Houston [14th Dist.] 1988, no writ). An employer-defendant, though, is not entitled to summary
judgment in a wrongful termination suit if a fact issue is raised concerning the existence of an agreement that
modifies the plaintiff's at-will employment status. See Ramos v. Henry C. Beck Co., 711 S.W.2d 331,
336 (Tex. App.Dallas 1986, no writ).

 In his first four points of error, Pickett contends that various comments made to him by
individual Housing Authority commissioners created an oral contract, not subject to the statute of frauds,
between him and the Housing Authority that altered his at-will employment status. (2) Pickett claims that the
Housing Authority breached this oral contract by terminating him without good cause. We believe this issue
is ultimately decided under Pickett's third point of error, in which he argues that the Housing Authority was
bound by its commissioners' individual statements.

 Individually, commissioners on the Board do not have authority to bind the Housing
Authority to a contract and thus alter Pickett's employment status. A local governmental entity (3) may
contract only upon express authorization of the governing body, i.e., by vote of that body as reflected in
the minutes. See Hill Farm, Inc. v. Hill County, 425 S.W.2d 414, 418 (Tex. 1968); Canales v.
Laughlin, 214 S.W.2d 451, 455 (Tex. 1948); Corpus Christi v. Bayfront Assocs., 814 S.W.2d 98, 105
(Tex. App.Corpus Christi 1991, writ denied). Individual statements of members of the governing body
are ineffectual for contractual purposes:



[O]fficials, acting singly, individually, and separately, at different places and times and upon
different occasions, could not bind themselves in their official capacity, nor the board of
city commissioners as a body, nor the government of the city, nor any of its departments. 
Those expressions, whether of casually friendly acquiescence, or of solemn promises, can
have no more bearing . . . than would similar expressions from a private citizen wholly
disconnected from the city government.


King v. Guerra, 1 S.W.2d 373, 374 (Tex. Civ. App.San Antonio 1927, writ ref'd). In the present case,
therefore, proof that the Housing Authority altered Pickett's at-will employment status could be supplied
only by the authenticated minutes of the meetings at which the action occurred, unless the minutes have
been lost or destroyed. See City of Bonham v. Southwest Sanitation, 871 S.W.2d 765, 767 (Tex.
App.Texarkana 1994, writ denied); Wagner v. Porter, 56 S.W. 560, 561 (Tex. Civ. App. 1900, no
writ). 

 The summary judgment evidence shows that Pickett did not seek to have the oral
representations voted upon or ratified by the Board in a duly authorized meeting held in accordance with
state law. (4) Although the comments of the individual Housing Authority commissioners were more than
mere compliments, they were not binding on the Housing Authority and did not create an oral contract
altering Pickett's at-will status. (5) Like any person contracting with a governmental entity, Pickett was
charged with notice of the limits of the commissioners' individual authority. See State v. Ragland Clinic-Hospital, 159 S.W.2d 105, 107 (Tex. 1942); City of Bonham, 871 S.W.2d at 767. Pickett was bound
at his peril to determine if the representations were authorized. Id. We overrule point of error three.

 In light of our discussion of Pickett's third point of error, we also overrule his first, second,
and fourth points of error.

 In point of error five, Pickett claims the written personnel policy, by-laws, and "standards
of conduct" maintained by the Housing Authority constitute an employment contract that was breached
when he was terminated. It has been held, however, that general company policies dealing with procedures
for discharging employees, unaccompanied by an express reciprocal agreement, do not create contract
rights regarding these procedures. See Hicks v. Baylor University Medical Center, 789 S.W.2d 299,
302 (Tex. App.Dallas 1990, writ denied); Salazar v. Amigos Del Valle, Inc., 754 S.W.2d 410, 413
(Tex. App.Corpus Christi 1988, no writ); Reynolds v. Mfg. Co. v. Mendoza, 644 S.W.2d 536, 539
(Tex. App.Corpus Christi 1982, no writ). For example, in United Transportation Union v. Brown,
694 S.W.2d 630 (Tex. App.Texarkana 1985, writ ref'd n.r.e.), the plaintiff produced evidence that she
accepted employment only after the defendant-employer promised that her employment would be governed
by an employee manual providing that an employee could be dismissed only for cause. Id. at 633. The
court held that the evidence of the promise between the employee and employer supported a finding by
the jury that there was an express agreement to contractually limit the employment-at-will rule. Id. Unlike
the plaintiff in Brown, Pickett did not allege or offer summary judgment evidence of any express written
or oral agreement that the Housing Authority's personnel policy, by-laws, or standards of conduct would
govern his employment.

 Another reason Pickett may not rely on the Housing Authority's personnel policy as an
employment contract is that the policy expressly gave the Housing Authority the power to amend the policy
unilaterally. (6) An employer's ability to unilaterally amend its personnel policy indicates that the policy is not
intended to form part of the employment contract. See Day & Zimmerman, Inc. v. Hatridge, 831
S.W.2d 65, 69 (Tex. App.Texarkana 1992, writ denied); Reynolds, 644 S.W.2d at 539. We overrule
point of error five.

 In his sixth point of error, Pickett contends that, irrespective of whether they formed part
of his employment contract, the Housing Authority's personnel policy, by-laws, and standards of conduct
specifically modified his at-will status, so that he could not be terminated by the Housing Authority absent
good cause. (7) Pickett cites to the following provisions to support his contention:



Housing Authority's Personnel Policy:


1. BASIC PRINCIPLES


 a. Merit System. The employment of personnel and all actions affecting
employees shall be based solely on merit, ability, and justice.


* * * 


4. AUTHORITY TO EFFECT PERSONNEL ACTIONS

 Authority to appoint, promote, transfer, demote and separate personnel shall be
vested in the executive director.


* * * 


6. CHANGES IN EMPLOYMENT STATUS


* * * 


 (2) Dismissal. An employee who gives unsatisfactory service or who
is guilty of violation of regulations shall be subject to dismissal. In such cases the
employee, if he desires, shall be given a hearing before the Executive Director.


Housing Authority By-laws:

 

 "The Secretary shall be appointed by the Authority. Any person appointed to fill
the office of Secretary, or any vacancy therein, shall have such term as the Authority fixes,
. . ."


Housing Authority Standards of Conduct:


1. BASIC PRINCIPLE. Each employee of the [Housing Authority] must realize that
the [Housing Authority's] basic and controlling purpose in employing him is the public
interest, rather than his private or personal interest, and that he can never have a right of
tenure that transcends the public good. He can properly be [a Housing Authority]
employee only as long as it remains in the public interest for him to be one.


 Any modification of the at-will status must be based on express rather than implied
agreements. Cote v. Rivera, 894 S.W.2d 536, 540 (Tex. App.Austin 1995, no writ); Mott v.
Montgomery County, 882 S.W.2d 635, 637 (Tex. App.Beaumont 1994, writ denied); Reynolds, 644
S.W.2d at 538. Texas courts have consistently held that general company manuals or handbooks do not
alter the at-will employment status absent express, clear, and specific language manifesting an intention
to do so. See, e.g., Brown v. Montgomery County Hosp. Dist., 929 S.W.2d 577, 583 (Tex.
App.Beaumont 1996, writ requested); Byars v. City of Austin, 910 S.W.2d 520, 524 (Tex.
App.Austin 1995, writ denied); Cote, 894 S.W.2d at 540-41; Martinez v. Hardy, 864 S.W.2d 767,
775 (Tex. App.Houston [14th Dist.] 1993, no writ). State v. Hardy, 769 S.W.2d 353, 355 (Tex.
App.Houston [1st Dist.] 1989, no writ).

 The Housing Authority's personnel policy, by-laws, and standards of conduct do not
explicitly state that Pickett can be fired only for good cause; rather, they establish certain procedures
regarding selection, compensation, promotion, and dismissal of Housing Authority employees, including the
right to a hearing upon dismissal. The standards of conduct specifically provide that a Housing Authority
employee is not entitled to tenure that transcends the public good. We conclude that the terms of these
documents do not expressly alter Pickett's at-will employment status. 

 Nor has the Housing Authority expressly and specifically altered its employees' at-will
employment status by merely providing procedural rights to its employees. See Renken v. Harris County,
808 S.W.2d 222, 225 (Tex. App.Houston [14th Dist.] 1991, no writ); see also Whitehead v.
University of Texas, 854 S.W.2d 175, 180-81 (Tex. App.San Antonio 1993, no writ); Lakeside
Leasing v. Kirkwood Atrium Office, 750 S.W.2d 843, 846 (Tex. App.Houston [14th Dist.] 1988, no
writ); Benoit v. Polystar Gulf Coast, Inc., 728 S.W.2d 403, 406 (Tex. App.Beaumont 1987, writ ref'd
n.r.e.). Thus, the summary judgment evidence showed that Pickett was at all material times an at-will
employee. We overrule point of error six.

 In his seventh point of error, Pickett contends there is a material issue of fact as to whether
the Housing Authority terminated him in violation of the written contract agreement and without good cause
or based on "merit, ability and justice." Based on our disposition of points of error five and six, we also
overrule Pickett's seventh point of error. 

 In his eighth point of error, Pickett claims there is a fact issue as to whether he received
"justice" prior to his termination. Pickett contends he was denied the opportunity to confront his accusers
and to inspect the alleged evidence against him in the hearing preceding his termination. We conclude,
however, that this point of error merely reasserts a procedural due process claim that Pickett waived when
this case was remanded from federal court, and he cannot reassert it in this cause. (8) Even if Pickett were
attempting to allege a new cause of action, we are unaware of any cause of action for denial of "justice"
apart from a violation of an individual's procedural due process rights. Moreover, we have already held
that the Housing Authority's personnel policy is not an employment contract giving rise to a contractual
claim for the denial of "justice." We overrule point of error eight.

 Finally, in his ninth point of error, Pickett claims that the trial court erred in granting
summary judgment on his promissory estoppel cause of action. We agree. Prior to filing his response to
the Housing Authority's motion for summary judgment, Pickett amended his petition to include a cause of
action for promissory estoppel, which he had not previously asserted. Although often characterized as
"defensive" in nature, Texas courts have recognized that the doctrine of promissory estoppel establishes
an independent ground of recovery. See, e.g., Cherokee Communications, Inc. v. Skinny's, Inc., 893
S.W.2d 313, 317 (Tex. App.Eastland 1994, writ denied); Adams v. Petrade Int'l, Inc., 754 S.W.2d
696, 707 (Tex. App.Houston [1st Dist.] 1988, writ denied); Kenney v. Porter, 604 S.W.2d 297, 303
(Tex. Civ. App.Corpus Christi 1980, writ ref'd n.r.e.); see also "Moore" Burger, Inc. v. Phillips
Petroleum Co., 492 S.W.2d 934, 936-37 (Tex. 1972).

 The Housing Authority did not amend its motion for summary judgment to seek summary
judgment on Pickett's promissory estoppel claim. The Authority filed only a supplemental brief in which
it addressed the claim. The district court granted the Housing Authority's motion for summary judgment,
rendering final judgment "as to all claims asserted by Plaintiff" and ordering that "all relief not expressly
granted herein is denied." (9)

 In general, a party may not be granted summary judgment on a cause of action not
addressed in the summary judgment motion. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d
337, 339 (Tex. 1993); Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983). 
Thus, when a defendant moves for summary judgment on only one of several causes of action, the trial
court can grant summary judgment solely on that one cause of action. Chessher, 658 S.W.2d at 564. "It
is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed
in a summary judgment proceeding." Id.

 Although the Housing Authority "addressed" Pickett's promissory estoppel claim in its
supplemental brief, grounds for summary judgment must be "expressly presented in the motion for summary
judgment itself." McConnell, 858 S.W.2d at 338; see also Stiles v. Resolution Trust Corp., 867 S.W.2d
24, 26 (Tex. 1993) (appellate court may not affirm summary judgment on ground not presented in motion). 
Reliance may not be placed on briefs when determining whether grounds are expressly presented in the
motion. McConnell, 858 S.W.2d at 341. We sustain point of error nine.



CONCLUSION


 We reverse the portion of the district court's judgment that grants summary judgment to
the Housing Authority on Pickett's promissory estoppel cause of action; we sever and remand that claim
to the district court for further proceedings. We affirm the remainder of the district court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones

Affirmed in Part; Reversed and Remanded in Part

Filed: January 9, 1997

Do Not Publish
1.   The Housing Authority's Board is a five-member body appointed by the city council of
the City of Killeen, Texas. See Tex. Loc. Gov't Code § 392.031 (West Supp. 1997).
2. The record contains summary judgment evidence that Pickett received oral assurances
about his job performance from various Housing Authority commissioners during his
employment with the Authority:


On June 13, 1992 and December 17, 1992, Commissioner Theron Johnson
commended Pickett on the work he was accomplishing for the Housing authority
and told Pickett that as long as Johnson was on the Board of Commissioners
Pickett would not have to worry about his job.


On December 17, 1992, Commissioner Geraldine Smith commended Pickett on
his work at the Housing Authority and told him that the Housing Authority would
keep him in the Executive Director position "forever" and the Board would not
let him leave, even if he tried to resign.


On December 21, 1994, Commissioner Carter commended Pickett for his work,
told him that he would not go unrewarded, and told him that he would never have
to worry about his job.


On March 21, 1994, Commissioner Carter again commended Pickett on his
work at the Housing Authority, stated that Pickett should not worry about his job,
and commented on the Housing Authority's need to adjust Pickett's
compensation to reflect the work he was accomplishing for the Housing
Authority. 
3. A housing authority is a unit of government, and its functions are essential governmental
functions, not proprietary functions. Tex. Loc. Gov't Code Ann. § 392.006 (West Supp. 1997).
4.   The summary judgment evidence does include minutes of an April 6, 1994 Housing
Authority Board of Commissioners meeting at which the Board voted unanimously to "stand
behind" Pickett in response to the sexual harassment allegations lodged against him. This
action, however, is not sufficient to effectuate a change in Pickett's employment status. Any
modification of the at-will status must be based on express rather than implied agreements. Cote
v. Rivera, 894 S.W.2d 536, 540 (Tex. App.Austin 1995, no writ); Mott v. Montgomery County,
882 S.W.2d 635, 637 (Tex. App.Beaumont 1994, writ denied).
5.   Even if the Housing Authority commissioners did have authority to informally create a
contract with Pickett, their compliments do not explicitly state that Pickett could only be fired
for "good cause." Compare Brown v. Montgomery County Hospital Dist., 929 S.W.2d 577, 584
(Tex. App.Beaumont 1996, writ requested) (holding employer's oral statement that employee would
not be fired without "good cause" created fact issue about existence of oral contract); Morgan, 764
S.W.2d at 826 (an oral agreement not to fire an employee except for "good cause" modifies the at-will
status). Any modification of the at-will status must be based on an express agreement. See note 4,
supra.
6.   Section 16 of the Housing Authority's personnel policy states:


 The personnel policy may be amended or updated to comply with Federal
Law and local public practice. Such amendment will be made by resolution of the
Board of Commissioners. 
7.   Pickett appears to claim that it was not necessary to prove the existence of an express
agreement that the Housing Authority's personnel policy, by-laws, and standards of conduct
would govern his employment in order to modify his at-will status. It is unclear, though,
whether an employee must, in order to establish a property interest in employment, show both
that the policy manual expressly and specifically alters the at-will relationship and the existence of an
express agreement that the manual would be binding. Compare Stiver v. Texas Instruments, 750
S.W.2d 845, 846 (Tex. App.Houston [14th Dist.] 1988, no writ); Benoit v. Polystar Gulf Coast,
Inc., 728 S.W.2d 403, 406 (Tex. App.Beaumont 1987, writ ref'd n.r.e.) with Goodyear Tire &
Rubber Co. v. Portilla, 879 S.W.2d 47, 50 n.5 (Tex. 1994); Vida v. El Paso Employees' Federal
Credit Union, 885 S.W.2d 177, 181 (Tex. App.El Paso 1994, no writ). We need not address this
issue, because, as discussed below, the Housing Authority's personnel policy, by-laws, and standards
of conduct do not contain the express, clear, and specific language necessary to alter Pickett's at-will
employment status.
8.   Pickett originally filed his lawsuit in state district court claiming he was denied due
process. The Housing Authority removed this case to federal court on the basis of Pickett's
due process claim. Pickett moved to remand the case asserting that his claim arose from a
contract between the parties rather than under the United States Constitution. In its "order
of remand," the federal court held that Pickett's decision to proceed exclusively on state-law
contract claims "will preclude him from later raising any `federal due process' claim from the
facts alleged in his Original Petition."
9.   The presence of the "Mother Hubbard" clause and similar language in the district
court's judgment makes it final for purposes of this appeal. See Mafridge v. Ross, 866 S.W.2d
590, 592 (Tex. 1992).



BR2">
On December 21, 1994, Commissioner Carter commended Pickett for his work,
told him that he would not go unrewarded, and told him that he would never have
to worry about his job.


On March 21, 1994, Commissioner Carter again commended Pickett on his
work at the Housing Authority, stated that Pickett should not worry about his job,
and commented on the Housing Authority's need to adjust Pickett's
compensation to reflect the work he was accomplishing for the Housing
Authority. 
3. A housing authority is a unit of government, and its functions are essential governmental
functions, not proprietary functions. Tex. Loc. Gov't Code Ann. § 392.006 (West Supp. 1997).
4.   The summary judgment evidence does include minutes of an April 6, 1994 Housing
Authority Board of Commissioners meeting at which the Board voted unanimously to "stand
behind" Pickett in response to the sexual harassment allegations lodged against him. This
action, however, is not sufficient to effectuate a change in Pickett's employment status. Any
modification of the at-will status must be based on express rather than implied agreements. Cote
v. Rivera, 894 S.W.2d 536, 540 (Tex. App.Austin 1995, no writ); Mott v. Montgomery County,
882 S.W.2d 635, 637 (Tex. App.Beaumont 1994, writ denied).
5.   Even if the Housing Authority commissioners did have authority to informally create a
contract with Pickett, their compliments do not explicitly state that Pickett could only be fired
for "good cause." Compare Brown v. Montgomery County Hospital Dist., 929 S.W.2d 577, 584
(Tex. App.Beaumont 1996, writ requested) (holding employer's oral statement that employee would
not be fired without "good cause" created fact issue about existence of oral contract); Morgan,