**Uriele Lawrence BOZÉ,
Plaintiff–Appellant,**

v.

**C. Burton BRANSTETTER, Individually and in his Capacity as Regional Counsel for Chevron, U.S.A., Inc., and Chevron, U.S.A., Inc., Defendants–Appellees.**

No. 90–2001.

United States Court of Appeals,
Fifth Circuit.

Sept. 25, 1990.

Ray L. Shackelford, Houston, Tex., for plaintiff-appellant.

Richard R. Brann, Baker & Botts, Houston, Tex., for defendants-appellees.

Before REAVLEY, DUHÉ and WIENER, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant, Uriele Lawrence Bozé (Bozé), appeals from the district court's grant of a motion for summary judgment dismissing Bozé's suit against Chevron U.S.A., Inc. (Chevron) and C. Burton Branstetter (Branstetter), regional counsel for Chevron. In his suit Bozé claimed constructive discharge in violation

of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1982). Bozé also claimed that Branstetter had defamed him in violation of Tex.Civ.Prac. & Rem.Code Ann. § 73.001 (Vernon, 1986). Finding no reversible error, we affirm.

## I

After a hearing on November 9, 1989, the district court granted the defendants' motion for summary judgment. On November 13, 1989, the court signed the final judgment dismissing the case with prejudice, and the clerk entered judgment the following day.

On December 13, 1989, Bozé timely filed a notice of appeal. Bozé did not order a transcript of the proceedings for the record on appeal. Instead, on the transcript order form, he checked on the multiple choice list the box which signified that the "[t]ranscript is unnecessary for appeal purposes." An appellant who does not order the entire transcript must within ten days after filing a notice of appeal file a statement of the issues which the appellant intends to present on appeal. FRAP 10(b)(3). Bozé did not file such a statement. He did not serve on Chevron and Branstetter within that same ten-day period as FRAP 10(b)(3) requires either (1) a copy of the certificate which FRAP 10(b)(1) mandates of an appellant who does not order a transcript of the proceedings; nor (2) the statement of the issues that he intended to present on appeal.[1]

## II

Bozé is a black attorney at law who worked from 1978 until 1984 for Gulf Oil Corporation (Gulf) in its Houston law department. Branstetter had worked there as an attorney in that same department since 1973. Branstetter had never supervised Bozé at Gulf but, Bozé alleges, on at least one assignment during their tenure at Gulf, Branstetter had behaved in a racist manner towards Bozé. He also alleges that Branstetter on several occasions had helped Bozé's immediate supervisor prepare performance evaluations which criticized Bozé's work.

In 1984 Chevron acquired Gulf. Bozé accepted employment in Chevron's law department in Houston. There Branstetter, who was regional counsel, directly supervised Bozé from July 1985 until Bozé resigned in December 1986. Bozé claims that Branstetter criticized Bozé's performance several times without knowing anything about his professional activities.

The catalyst provoking Bozé to resign was a critical performance evaluation dated October 6, 1986, which Branstetter prepared. Bozé received the evaluation on October 8th. As a result of that evaluation, Branstetter placed Bozé on probation for sixty days. He also added that if Bozé failed to improve within that time and to "sustain the corrections throughout his career," the company would have "no alternative but disciplinary action, including discharge." Among the improvements which the evaluation sought were, as Bozé states in his brief, that he "first demonstrate dependability and job commitment by getting to work on time, applying himself consistently while at work, and staying at work throughout the workday unless he had approval of Appellee B[ranstetter] to leave." No other attorney at Chevron, Bozé states, had to get permission to leave during the workday. Bozé also had "to accept guidance on style and substantive matters without argument, and was required to improve the quality and organization of oral and written communications."

Bozé claims that without his approval Branstetter published this evaluation to P.S. Hobin and J.L. Burch, respectively Chevron's general and associate general counsels. Branstetter replies that in pre-

---

1. Dismissing "the appeal for failure to provide a complete transcript of the record on appeal is within the discretion of the court." *Coats v. Pierre*, 890 F.2d 728, 731 (5th Cir.1989) (quoting *Gulf Water Benefaction Co. v. Public Utility Comm'n*, 674 F.2d 462, 466 (5th Cir.1982)); *see* FRAP 3(a). While we decline to exercise that option in this instance, we necessarily limit the scope of our review to the available record.

paring the evaluation he consulted with both of these men who were his supervisors. Bozé also alleges that during a meeting on October 8th to discuss the evaluation, Branstetter told him in Burch's presence that he, Bozé, was the worst-rated lawyer in the company's legal department.

On December 8, 1986, Bozé sent his "final formal response" to the evaluation to Charles B. Renfrew, director and vice president of Chevron. Renfrew notified Bozé on December 9th that Chevron would treat his response as an employee grievance under section 344 of the company's policy manual. He also referred the grievance to Hobin to "continue procedures in accordance with company policy."

At a meeting on December 18, 1986, with Bozé to discuss his performance, Branstetter removed Bozé from probation. The next day Hobin inquired by mail whether Bozé wanted to pursue his grievance since he was no longer on probation. By letter dated December 29, 1986, Bozé resigned effective January 1, 1987. He claimed that he could "no longer tolerate the prejudice, the double standards, the harassment, the intimidation and the physical and emotional stress associated with working under C. Burton Branstetter." He also asserted that Chevron had ignored his claims in his final formal response and had delegated his grievance for determination to Hobin, one of the individuals of whom he had complained. Bozé argues that he was constructively discharged.

## III

### A.

▮ In reviewing a summary judgment, we apply the same standard as the district court, *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989), and ask whether the pleadings, depositions, and answers to interrogatories, together with the affidavits, demonstrate that no genuine issue of material fact remains and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In making that determination, we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). Accordingly, we view the evidence most favorably to Bozé.

### B.

As recently as *Jurgens v. EEOC*, 903 F.2d 386 (5th Cir.1990), this court reiterated the standard for constructive discharge which we had first enunciated in *Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975): "The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Jurgens*, 903 F.2d at 390 (citing *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980) (quoting *Young*, 509 F.2d at 144)). In *Bourque* we specifically endorsed a reasonable-employee test: "To find constructive discharge we believe that 'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Bourque*, 617 F.2d at 65 (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977)).

▮ In cases after *Bourque*, we have explicitly placed the burden on the employee to prove constructive discharge. *Jurgens*, 903 F.2d at 390 (citing *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. Unit B June 1981)). Proof is not required that the employer imposed intolerable working conditions with the specific intent to force the employee to resign. *Jurgens*, 903 F.2d at 390 (citing *Bourque*, 617 F.2d at 65 & n. 5) (acknowledging that some other circuits have endorsed such a strict standard).

We also noted in *Bourque* that our constructive discharge standard supports the

purpose of title VII. We rejected the argument that "to require employees suffering illegal discrimination to seek legal redress while remaining in their jobs would contravene the policies served by title VII because then only 'foolhardy' victims would seek relief from discrimination." *Bourque*, 617 F.2d at 65–66. "Title VII itself accords legal protection to employees who oppose unlawful discrimination. Moreover, we believe that society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships." *Id.* at 66 (citations and footnote omitted).

■ After carefully scrutinizing the (incomplete) record before this court and considering all the evidence from which we might infer that Chevron and Branstetter or either of them discriminated against Bozé, we do not find even a modicum of evidence to suggest that either of those parties discriminated against Bozé. He supplies only the barest, conclusory assertion that he was a victim of racial discrimination. Neither the discrimination that Bozé alleges nor the working conditions he decries constitute the intolerable working conditions required to prove constructive discharge. Consequently, we hold that, unlike Bozé, a reasonable employee would not have resigned.

Under the prevailing circumstances, a reasonable employee instead of resigning would first have pursued either or both of two courses—completed the internal grievance process, or filed a complaint with the Equal Employment Opportunity Commission (EEOC). Bozé pursued neither.

A reasonable employee dissatisfied with his performance evaluation would have pursued Chevron's grievance procedures. *See Junior v. Texaco, Inc.*, 688 F.2d 377,

380 (5th Cir.1982) (black employee who resigned without initiating internal appeal process after appraisal criticizing his tardiness and work habits was not constructively discharged). Bozé chose not to pursue Chevron's procedures because, he complains, Chevron first referred his response to his performance evaluation to a person about whom he had complained. As Chevron's policy manual clearly states, such referral was only an initial step in a grievance proceeding. Bozé, like all dissatisfied employees, could eventually have presented his grievance to a settlement committee composed of "two members of management" and "personnel and labor relations representatives." Referring a disgruntled employee to an internal grievance process could never constitute the intolerable work conditions necessary to establish constructive discharge.[2]

Instead of resigning, a reasonable employee might also have pursued a second option—filing a discrimination complaint with the EEOC. An employee does not have to resign or wait to be fired to do so. *See Bourque*, 617 F.2d at 66. However, Bozé waited to file until he had resigned. We have held that employees who oppose unlawful discrimination best serve the policies underlying Title VII, which accords them legal protection, if they attack that discrimination "within the context of existing employment relationships". *Id.*

■ Turning now to Bozé's other allegations, we find the record destitute of any supporting evidence. Even if, as Bozé alleges, he was overlooked for appointment as senior counsel while others hired at the same time were not, he offers no shred of evidence to suggest that Chevron's not promoting him was discriminatory. A failure to promote does not in and of itself suffice to result in a constructive discharge.

---

**2.** Given that Bozé elected not to respond to Hobin's letter of December 19, 1986, inquiring whether Bozé still wished to pursue his grievance since he was no longer on probation, we find no merit in Bozé's complaint that the defendants did not offer him any help in exhausting his administrative remedies.

We find equally lacking in merit his charge that he had "never had any performance evalua-

tion discussions in accordance with Chevron policy No. 342." The record contains no evidence to demonstrate that he sought such discussions when his evaluations displeased him.

Finally, we find the record provides no support for the allegation that "Branstetter indicated to the Plaintiff that his days at [Chevron] were numbered." In fact, the record indicates that Chevron wanted to retain Bozé's services.

*EEOC v. Federal Reserve Bank,* 698 F.2d 633, 672 (4th Cir.1983), *rev'd on other grounds, Cooper v. Federal Reserve Bank,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *see also Wardwell v. School Bd.,* 786 F.2d 1554, 1557 (11th Cir.1986) ("while a discriminatory refusal to promote would be relevant to the issue of whether [plaintiff] was constructively discharged, such evidence is not always sufficient to support a finding of constructive discharge"); *see generally* 3 A. Larson & L. Larson, Employment Discrimination § 86.50, at 17–62 (1989) ("Claims of constructive discharge have generally not succeeded in cases where they are based on ... denial of promotion....").

■ Bozé also alleges that Branstetter withdrew some of Bozé's responsibilities and reassigned them to more inexperienced attorneys. Admittedly, a loss of responsibilities is in many respects like a demotion. While in some instances a demotion may constitute a constructive discharge, *see Jett v. Dallas Indep. School Dist.,* 798 F.2d 748, 755 (5th Cir.1986), we find little evidence in the record to support Bozé's allegation. Even if he did lose some responsibilities, neither that loss nor his new working conditions were so intolerable that a reasonable employee would have resigned. *See id.*

In sum, we find that neither Branstetter nor Chevron constructively discharged or racially discriminated against Bozé. Even if, arguendo, the defendants had constructively discharged Bozé, the record does not proffer even a scintilla of evidence to suggest that they did so for racial reasons. Because Bozé presumably was an at-will employee, Chevron and Branstetter could simply have fired him provided they did not do so for racial reasons. They had no need to manipulate a constructive discharge.

## IV

■ Bozé alleges that Branstetter defamed him,[3] first, by writing a performance evaluation which "was totally devoid of objectivity and impartiality"; and, second,

by calling Bozé, before Chevron's associate general counsel, "the worst rated lawyer throughout [Branstetter's] tenure with Gulf and ... now the worst rated lawyer in the Chevron U.S.A.–Law Department." We hold that a qualified privilege exists as to both the performance evaluation and the comments. We also hold that because the record provides no evidence of malice or want of good faith, that Branstetter did not defame Bozé.

Whether a qualified privilege exists is a question of law. *Houston v. Grocers Supply Co., Inc.,* 625 S.W.2d 798, 800 (Tex.Ct. App.1981) (citing *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814 (Tex. Ct.App.1980); *Mayfield v. Gleichert,* 484 S.W.2d 619 (Tex.Ct.App.1972)). "A qualified privilege comprehends communications made in good faith on subject matter in which the author has an interest or with reference to which he has a duty to perform to another person having a corresponding interest or duty." *Grocers,* 625 S.W.2d at 800 (citations omitted); *Gaines v. CUNA Mut. Ins. Soc'y,* 681 F.2d 982, 986 (5th Cir.1982).

Branstetter, as Bozé's supervisor, had a particular interest in Bozé's performance. Furthermore, both Branstetter's providing the evaluation to other employees, especially to his own supervisors, and his commenting on Bozé's record to one of those supervisors are privileged communications. "The privilege protects statements made by an employer concerning an employee." *CUNA,* 681 F.2d at 986 (citing *Oshman's Sporting Goods,* 594 S.W.2d at 816; *Butler v. Central Bank & Trust Co.,* 458 S.W.2d 510, 514–15 (Tex.Ct.App.1970)). The public policy which the privilege advances "recognizes the need for free communication of information to protect business and personal interests." *CUNA,* 681 F.2d at 986 (citing Restatement (Second) of Torts, Scope Note preceding § 593 (1977)). This court has held, in cases concerning the similar Louisiana and Mississippi qualified privileges, that "all employees have an interest in their employer's termination policies and grounds for termination." *Rouly*

---

3. Tex.Civ.Prac. & Rem.Code Ann. § 73.001 (Vernon 1986).

*v. Enserch Corp.*, 835 F.2d 1127, 1130 (5th Cir.1988) (affirming summary judgment for Louisiana employer); *Garziano v. E.I. Du Pont De Nemours & Co.*, 818 F.2d 380, 387–88 (5th Cir.1987) (applying Mississippi law).

Neither party in this case disputes that a person who makes the privileged communication with malice or want of good faith loses the qualified privilege. *Grocers*, 625 S.W.2d at 801; *Bridges v. Farmer*, 483 S.W.2d 939 (Tex.Ct.App.1972). Also, neither party disputes that a defendant who moves for summary judgment bears the burden of proving the absence of malice. *Grocers*, 625 S.W.2d at 801. While the movant's burden to show the absence of malice is a heavy one, the nonmovant must do more than merely allege malice. *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir.1986).

Were mere allegations to suffice, a defamation defendant's summary judgment motion could never succeed. Summary judgment motions would be meaningless, time-consuming, and expensive exercises. The Supreme Court has declared that "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Consequently, for its claims to withstand a summary judgment motion, a party must do more than merely rest on its pleadings. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Because Bozé fails to make such a sufficient showing, "no genuine issue" exists "as to any material fact." Branstetter and Chevron are, therefore, "entitled to a judgment as a matter of law."

The summary judgment proof in this case includes Branstetter's deposition and his affidavit, in which he asserted a cordial relationship with Bozé. Branstetter also asserted in his affidavit that "[t]he evaluation was not disclosed to anyone in the Chevron organization, or elsewhere, who did not have a direct interest and need to know about [Branstetter's] views of Mr. Bozé's job performance. The performance evaluation was never disclosed to anyone outside Chevron or anyone in Chevron who did not have a direct interest in knowing how [Branstetter] thought one of the lawyers in [his] department was performing." Even Bozé does not aver that Branstetter "published" the report or utterances to anyone other than Hobin, Chevron's general counsel; Burch, its associate general counsel; and all its regional counsel.

In his affidavit, Branstetter expressed surprise that Bozé had resigned. Branstetter had assumed that Bozé "was planning on continuing his career with us." Branstetter stated that in a "very cordial" meeting at the end of the probationary period, he had complimented Bozé on his performance during that period and told him that he thought that Bozé "could be a satisfactory job performer and make a significant contribution to the work of [their] unit."

Bozé's deposition supports Branstetter's evidence. Bozé admits that the post-probation meeting was a "cordial" one, that Branstetter "seemed friendly," that Branstetter had told him that "they needed [his] expertise." Bozé offers no evidence in his summary judgment material which tends to suggest malice or bad faith. At best he makes conclusory allegations of personal vendettas and defamatory allegations.

Texas courts have held that when uncontradicted evidence comes from an interested witness who favors the movant's position, they will consider its merits if it is "clear, direct, and positive." *Grocers*, 625 S.W.2d at 801–02. In this case not only is the evidence "clear, direct, and positive," but, as in *Grocers*, the circumstances of the case and the evidence tend to support, not discredit, the affidavit. "When everything that can be adduced at trial is before the judge on motion and the parties, while urging conflicting ultimate facts or conclusions, have no evidentiary disputes, a trial

serves no useful purpose." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986).

### Conclusion

Because Bozé claimed both racial discrimination in constructively firing him and racial defamation, and because we are reviewing the grant of a summary judgment motion, we have meticulously scrutinized the available record, weighing the evidence most favorably to Bozé. We have given him the benefit of any doubt. However, as we repeated throughout our analysis, we have not found any evidence that bestows credence upon Bozé's claims. Chevron and Branstetter did not discriminate against him racially, nor did Branstetter defame him.

For the reasons stated above, this judgment is

AFFIRMED.