MEMORANDUM AND ORDER

ATLAS, District Judge.
Pending before the Court is Defendant Continental Casualty Company’s (“Continental” or “Defendant”) Motion for Summary Judgment [Doc. # 25]. For the reasons discussed below, Defendant’s Motion is GRANTED.
I. FACTUAL BACKGROUND
Continental issued a comprehensive general liability policy to the Brand Companies, including Scaffold Builder’s, Inc. (“SBI”), on or about March 1, 1989. On March 6, 1990, SBI entered into a construction/maintenance/service contract with Crown Central Petroleum Corporation (“Crown” or “Plaintiff’), pursuant to which, SBI agreed (i) to erect and dismantle scaffolding at Crown’s Pasadena refinery; (ii) to defend, indemnify and hold Crown harmless from all claims arising out of SBI’s work at the refinery;[1] *638 and (iii) to make Crown an additional insured on certain of SBI’s insurance policies, including the policy made the basis of this lawsuit.
In 1992, two SBI employees filed independent lawsuits against Crown, claiming injuries from exposure to airborne hydrofluoric acid in a battery unit[2] at Crown’s Pasadena refinery on August 31, 1990. Crown settled these lawsuits and subsequently sued Continental, claiming that, under Crown’s 1990 contract with SBI, Continental owes Crown a duty to pay for the defense costs and to indemnify Crown for the resulting settlement amounts. Continental disagrees, arguing that an “absolute pollution exclusion” endorsement in SBI’s policy relieves it of any duty to defend or indemnify Crown.[3]
II. SUMMARY JUDGMENT STANDARD
In deciding a motion for summary judgment, the Court must determine whether “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 817, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); Boze v. Branstetter, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. Boze, 912 F.2d at 804 (citing Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant “only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.” McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir.), revised on other grounds upon denial of reh’g, 70 F.3d 26 (1995).
The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evi *639 dence supporting the essential elements of the non-movant’s case, shift to the non-mov-ant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact' so as to warrant a trial. Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir.1995); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).
The non-movant’s burden may not be satisfied by conelusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075. In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. McCallum Highlands, 66 F.3d at 92; Little, 37 F.3d at 1075 (citing Lujan v. National Wildlife Fed’n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party’s ease, and on which that party will bear the burden at trial. Little, 37 F.3d at 1075 (citing Celotex, 477 U.S. at 322, 106 S.Ct. at 2552).
III. DISCUSSION
In determining whether an insurer has a duty to defend its insured, Texas courts generally look only to the allegations of the plaintiffs complaint and the terms of the insurance contract. Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 393 (5th Cir.1995). Under this so-called “eight corners rule” or “complaint allegation rule,” the allegations of the complaint are taken as true, and the duty to defend arises if the complaint thus construed asserts a claim facially within the coverage of the policy. Id. The insurer is not required to defend if the complaint only alleges facts excluded by the policy. Id. Unlike the duty to indemnify, which is based upon the underlying facts that result in the insured’s liability, the duty to defend is not affected by the facts of the case ascertained before, during, or after the suit. Cluett v. Medical Protective Co., 829 S.W.2d 822, 829 (Tex.App.—Dallas 1992, writ denied).
In National Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517 (Tex.1995), a case similar to that at bar, the Texas Supreme Court considered whether “absolute pollution exclusions” applied to exclude damage coverage from an accidental explosion at an oil refinery. The explosion in CBI produced a toxic cloud of hydrofluoric acid in the vicinity of the refinery. Local residents sued CBI, the contractor responsible for the accident, alleging personal injuries resulting from the accident. CBI, in turn, sued, the insurance companies that had issued it general liability policies. The insurance companies moved for summary judgment on the ground that the “absolute pollution exclusions” in their policies precluded coverage as a matter of law. CBI argued in response that the policies, by virtue of these exclusions, contained both patent and latent ambiguities and therefore should not be construed to exclude coverage.
The Court rejected this argument, finding that the language of the exclusions was clear and unambiguous, and that coverage therefore was excluded under the policies. In thus construing the pollution exclusions, the Court addressed the concept of contract ambiguity generally:
If ... the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered ... An ambiguity in a contract may be said to be “patent” or “latent.” A patent ambiguity is evident on the face of the contract. A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. If a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement.
*640 CBI, 907 S.W.2d at 520 (citations omitted). Applying these principles to the pollution exclusions at issue, the Court went on to find that the exclusions were neither patently nor latently ambiguous. Id. at 521.
In the case at bar, Defendant Continental argues that the pertinent policy language is even clearer and more absolute than the language upheld in CBI[4] and that the pollution exclusion is neither patently nor latently ambiguous. Continental refers to the following contract language:
The insurance afforded by this policy does not apply to:
A. The contamination of any environment by pollutants that are introduced at any time, anywhere, in any way;
B. Any bodily injury ... arising out of such contamination.
Defendant’s Motion for Summary Judgment, Exh. A (Pollution Exclusion). The Court finds that Continental’s absolute pollution exclusion is clear and unambiguous; it contains no patent ambiguity. Under the exclusion as written, coverage is excluded for “the contamination of any environment by pollutants that are introduced at any time, anywhere, in any way.” The “introduction” of contaminants “at any time, anywhere, in any way” necessarily includes the escape of pollutants “at,” in addition to “from,” the premises of the insured.[5]
This absolute pollution exclusion excludes coverage for SBI, and thus Crown, in this case because Smith and Collins in the underlying personal injury suits alleged in their pleadings that they sustained bodily injuries as a result of exposure to airborne hydrofluoric acid in a battery unit within Crown’s plant. Smith and Collins’ allegations thus meet the requirement under the pollution exclusion of Continental’s contract of insurance that the accidents be caused by the “contamination” of “any environment” by “pollutants” “introduced at any time, anywhere, in any way.”[6]
Plaintiff Crown argues that there is a latent ambiguity in the pollution exclusion on the basis of the circumstances present when it entered into the SBI/Crown contract. Specifically, Plaintiff argues that a significant circumstance surrounding formation of this contract was a “notice” issued by Continental in February 1986 that described some of the major features of the company’s newly revised commercial general liability policies.[7] Specifically, Plaintiff points to the following sentence:
Pollution Liability. The new policies do not cover this liability if the pollutants *641 escape from your premises or a waste disposal or treatment facility.
Defendant’s Motion for Summary Judgment, Exh. A (February 1986 Notice). On the basis of this single sentence, Plaintiff argues that, in 1986, prior to issuance of the SBI policy, Continental interpreted the language in the policy’s pollution exclusion to afford coverage in situations where pollutants did not escape from the insured’s premises.[8] Whole superficially plausible, Plaintiffs argument is unavailing when this sentence is considered in conjunction with the parenthetical comment which follows:
Pollution Liability. The new policies do not cover this liability if the pollutants escape from your premises or a waste disposal or treatment facility. (The exclusion in the previous policy did not apply to “sudden and accidental” emissions of pollutants; the new exclusion does not have this exception).
Id. This parenthetical remark (which necessarily modifies the preceding sentence) suggests, not that coverage is provided if pollutants do not escape from an insured’s premises, but that coverage now excludes all emissions, even those that are “sudden and accidental.” Moreover, Plaintiffs suggested interpretation is at odds with the language of the preceding notice, sent to policyholders in January 1986, which stated that “coverage ... is no longer afforded the sudden and accidental emissions of pollutants at or from insured premises.” Defendant’s Motion for Summary Judgment, Exh. A (January 1986 Notice).
Regardless of Plaintiffs interpretation of the February 1986 notice (or the interpretation which it attributes to Defendant), its argument is defeated entirely by the disclaimer at the top of that notice, which reads as follows:
This pamphlet is not your policy. It merely describes some of the major features of the new Commercial General Liability policy. READ YOUR POLICY CAREFULLY to determine rights, duties, and what is and is not covered. Only the provisions of your policy determine the scope of your insurance protection.
Defendant’s Motion for Summary Judgment, Exh. A (February 1986 Notice). There could be no clearer indication that the February notice did not determine the scope of protection under the SBI policy. The disclaimer makes clear that only the provisions of the policy, which necessarily includes the pollution exclusion, determine the scope of insurance protection. Therefore, no latent ambiguity arises when the pollution exclusion is considered in light of the circumstances present when Crown entered into a contractual relationship with SBI in March 1990.[9]
It is conceivable that Plaintiff intends to argue that application of the CBI test (consideration of the “circumstances present when the contract was entered”) requires the Court to consider the other clauses in the SBI/Crown contract, such as SBI's commitments to indemnify and to provide insurance to Crown for the work SBI was to do.
This argument is unavailing, however. The parties expressly agreed that SBI would indemnify Crown for costs associated with all injuries occurring as a result, in whole or in part, of SBI’s negligence and that SBI would provide insurance for this job.[10] The SBV *642 Crown contract gave Crown the right to approve the form of the contract of insurance that SBI obtained for the purpose. There is no ambiguity or suggestion in the SBI/Crown contract to support the result advocated by Crown. SBI’s insurance contract with Continental contained an absolute pollution exclusion clause and Crown could obtain no more protection from Continental than SBI had. SBI, not Continental, is the party that promised the indemnity to Crown; Crown may still seek to enforce its contract right against SBI.[11]
Because the pollution exclusion is neither patently nor latently ambiguous, the Court finds that coverage is excluded for the personal injuries alleged in the underlying lawsuits. The circumstances surrounding the creation of the SBI/Crown contract do not in any way provide any other basis for implying that Continental had an obligation to insure against the damages suffered by Crown. Therefore, Defendant has neither a duty to defend nor indemnify Plaintiff for the settlement amounts awarded in the underlying personal injury actions.
Continental has also moved for summary judgment on behalf of its agent, Near North Insurance Agency and/or Near North Insurance Brokerage, Inc.[12] At oral argument held on July 22, 1996, Plaintiffs counsel conceded that, if the Court were to dismiss the claims against Continental, the claims against Near North would not survive. Because the Court grants summary judgment in favor of Continental, Plaintiffs claims against Near North also are dismissed.
IV. CONCLUSION
For the reasons discussed above, Defendant’s Motion for Summary Judgment is GRANTED. All claims against Continental and Near North are therefore DISMISSED.

. The contract between SBI and Crown provided that Crown was indemnified only for claims arising out of the parties’ joint negligence:
[SBI] agrees to and shall indemnify and hold harmless Crown, its directors, officers, agents, representatives, and employees, from and against any and all claims, losses, damages, causes of action, suits, and liability of every kind, including all expenses of litigation, court costs, and attorney’s fees, for injury to or death of any person ... arising out of or in connection with the Work done for any performance or lack of performance under this Contract, where such injuries ... are caused by the joint or concurrent negligence of [SBI] and Crown. *638 It is the" expressed intention of the parties hereto, both [SBI] and Crown, that the indemnify provided for in this paragraph is indemnity by [SBI] to indemnify and protect Crown from the consequences of Crown’s own negligence, where that negligence is a concurring cause of the injury, death or damage. Furthermore, the indemnity provided for in this paragraph shall have no application to any claim, loss, damage, cause of action, suit and liability where the injury, death or damage results from the sole negligence of Crown unmixed with the fault of any other person or entity.
Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiffs Response”), Exh. 1, ¶ 27.4.

. The battery unit apparently encompasses a substantial space large enough for one or more workers to walk inside and to erect scaffolding that is needed to repair or clean the unit.

. The pollution exclusion, which was attached to the SBI policy and took effect on the effective date of the policy, provides as follows:
1. The insurance afforded by this policy does not apply to:
A. The contamination of any environment by pollutants that are introduced at any time, anywhere, in any way;
B. Any bodily injury, personal injury, properly damage, costs or other loss or damage arising out of such contamination, including but not limited to, cleaning up, remedying or detoxifying such contamination; or
C.Payment of sums related to (1) the-investigation or defense of any loss, injury or damage or (2) payment of any cost, fine or penalty or (3) payment of any expense or claim or suit related to A or B above.
2. As used in this endorsement, the following terms will have the following meanings:
A. "Contamination” means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of pollutants, whether permanent or transient in any environment.
B. "Environment” includes any person, any manmade object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled, or occupied by the insured;
C. "Pollutants” means smoke, vapors, soot, fumes, acids, sounds, alkalies, chemicals, liquids, solids, gases, thermal pollutants, and all other irritants or contaminants.
Defendant’s Motion for Summary Judgment, Exh. A (Pollution Exclusion).

. There were three insurance policies, each with pollution exclusions at issue in CBI. The first policy contained the following exclusion:
This policy does not apply to ... any Personal Injury or Property Damage arising out of the actual or threatened discharge, dispersal, release or escape of pollutants, anywhere in the world; ... "Pollutants” means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste materials include materials which are intended to be or have been recycled, reconditioned or reclaimed.
The other policies contained the same exclusion:
Notwithstanding anything to the contrary contained in this policy, this policy is amended in that it shall not apply to any claim or claims: For personal injuries or property damages directly or indirectly caused by seepage or pollution or contamination of air, land, water or any other property, however caused and whenever occurring.
CBI, 907 S.W.2d at 519.

. If Continental had intended to provide coverage in situations where pollution did not escape from the insured’s premises, the pollution exclusion would not have been worded so broadly.

. Pursuant to the definitions in the pollution exclusion, "contamination” means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of pollutants (which by definition include hydrofluoric acid); "environment” includes any manmade object or the air (Smith and Collins were injured by exposure to airborne hydrofluoric acid in Crown’s battery units); and "pollutants” includes acids (here hydrofluoric acid).

. Somewhat inconsistently, Plaintiff objects to the supplemental affidavit of Michael Roble on the basis that Roble offers his opinion concerning Continental’s intent in preparing and distributing two notices sent to Continental policyholders in 1986. Becausé Roble did not begin his employment with Near North until 1994, the Court sustains this objection. However, Roble’s supplemental affidavit is accepted insofar as it distinguishes the 1986 notices from the SBI policy itself.

. Plaintiff argues that, because the hydrofluoric acid leak was contained within the battery units, and did not escape from the premises of the refinery, coverage is not excluded under the pollution exclusion.

. Although coverage is excluded under the Continental policy, Crown may have a claim directly against SBI, in light of the fact that SBI agreed to defend, indemnify and hold Crown harmless from all claims arising out of SBI's work at the refinery. However, while SBI agreed to indemnify Crown for claims arising out of the parties’ joint negligence, see supra note 1, there is no indication in the record that SBI’s negligence contributed to Smith's or Collins’ injuries.

.See supra note 1 (indemnity clauses). SBI’s obligation to provide insurance was set forth in the following provision of the SBI/Crown contract:
To protect Crown against liability, loss, or expenses arising from damage to property or injuiy or death of any person or persons arising out of or in any way connected with, incident to, or resulting from the Work or services provided for herein, [SBI] shall at all times, during the progress of the Work, at its own expense, on forms and with reliable insurance companies acceptable to Crown, carry and maintain the minimum insurance coverages set out in Appendix “D", and [SBI] shall fur *642 nish to Crown the original or copies of the insurance certificates which evidence such insurance coverage. Crown shall be added as an additional insured in all such certificates, except the Workmen's Compensation Coverage. [SBI] shall cause each of its subcontractors to maintain the same insurance coverage and in amounts that are required of [SBI].
All of the insurance coverages required of [SBI] shall contain the provision that the insurer and [SBI] waive and will have no right of recovery or subrogation against Crown, its divisions, parent, or subsidiary companies, it being the intention that the insurance so effected shall protect both Crown and [SBI] and that the insurer will be primarily liable for any and all losses covered by the above described insurance.
Plaintiffs Response, Exh. 1, ¶ 27.6.

. The Court does not intend to imply in any way that SBI is liable to Crown under the circumstances presented. The Court does not reach that issue here. But see supra note 9.

. Near North Insurance Brokerage, Inc., a Texas corporation, was dismissed from this action in November 1995 [Doc. #25], Therefore, the Court deems Continental’s motion applicable only to Near North Insurance Agency.