**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-40298

MELONIE WADE,

Plaintiff-Appellant,

VERSUS

TOM WALTON; VICTORIA COLLEGE,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(V-95-124)

January 15, 1998

Before WISDOM, HIGGINBOTHAM, and STEWART, Circuit Judges.

PER CURIAM:[*]

Melonie Wade appeals the summary judgment entered for Defendant-Appellee Victoria College on her retaliation claim brought under Title VII of the Civil Rights Act of 1964. We affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Wade was employed by the College in July 1991 as the Articulation Coordinator for the newly-formed Tech Prep program, a federally funded, state-wide program. Wade's immediate supervisor was Tom Walton, who was responsible for technical education at the College and was originally in charge of the Tech Prep program. Walton reported to Dr. Steve Thomas, the Dean of Instruction.

Walton made remarks to Wade with implied sexual connotations beginning just days after Wade's employment began. On February 25, 1992, Wade confronted Walton about his inappropriate comments for the first time and informed him that they were offensive and unwelcome. The next morning, Walton reprimanded Wade concerning her job performance for the first time. Over the next two days, they had a series of heated discussions that culminated, on February 27, 1992, in Walton screaming and pointing his finger at Wade and Wade retreating in tears. Wade characterizes the February disputes as retaliation for her allegations of sexual harassment, but the College contends that the disputes centered on their differing views about their respective authority over policy and budget in the Tech Prep program. On February 28, 1992, Wade complained about Walton's inappropriate sexual comments to Dr. Jimmy Goodson, the President of the College. In response to Wade's complaint, President Goodson removed Walton as Wade's supervisor, arranged for Wade to report directly to Thomas, and directed Wade and Walton to communicate in writing only. Wade was also promoted to Tech Prep Coordinator and given a raise. Wade and Walton were

2

never again alone together.

In spite of the College's remedial action and the absence of any further direct contact between Wade and Walton, Wade alleges that Walton continued to retaliate against her and that the College either failed to respond appropriately or affirmatively participated in the retaliation. In a letter dated December 11, 1992, she resigned from her position, citing sexual harassment and program sabotage as the motivating factors.

Wade filed suit in state court against the College alleging sexual harassment, retaliation, wrongful termination and breach of contract. The case was removed to federal court. The district court granted summary judgment for defendants with respect to all of Wade's claims.

This court reviews the district court's grant of summary judgment *de novo*. *Armstrong v. City of Dallas*, 997 F.2d 62, 65 (5th Cir. 1993). Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

To establish a prima facie case of retaliation, Wade was required to present admissible evidence that (1) she engaged in activity protected under the anti-discrimination statute; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in protected activity and the adverse employment action. *Jones v. Flagship Int'l*, 793 F.2d 714,

719-20 (5th Cir. 1986).

There is no dispute that Wade engaged in activity protected by the anti-discrimination statute when she reported Walton's sexual harassment to President Goodson. As to the second and third elements, Wade contends that the adverse employment action she suffered should be treated as a constructive discharge. To succeed on this claim, Wade must show that the working conditions she faced were so intolerable that a reasonable person in her shoes would have felt compelled to resign. *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242 (5th Cir. 1993). Wade must also establish that the actions that led to her decision to quit were tainted by unlawful animus. *See Boze3 v. Branstetter*, 912 F.2d 801, 806 (5th Cir. 1990).

There is no evidence in this record that the College harbored retaliatory intent or took any action calculated to encourage Wade's resignation. *See Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). Although Wade and Walton had an unpleasant working relationship after she reported the sexual harassment, the summary judgment evidence does not raise a material question of fact on Wade's claim of constructive discharge or on the element of causal connection.

AFFIRMED.